In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-1363

PARVEEN IDRIS, *et al.*,

*Plaintiffs-Appellants*,

*v.*

CITY OF CHICAGO, ILLINOIS, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 06 C 6085—**Robert W. Gettleman**, *Judge*.

ARGUED NOVEMBER 5, 2008—DECIDED JANUARY 5, 2009

Before EASTERBROOK, *Chief Judge*, and RIPPLE and
ROVNER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. In 2003 the City of Chicago
began to install cameras to take photos of cars that run red
lights and make illegal turns. An ordinance provides that
the car's owner is liable for the $90 fine no matter who was
driving—though for leases by auto manufacturers or
dealers (or other leases on file with the Department of
Revenue), the lessee rather than the owner is responsible.

Chicago Code §9-102-020(3). Recipients of citations can defend by showing that the car or its plates had been stolen, or the vehicle sold; they may not defend by showing that someone else was driving. Plaintiffs are auto owners who say that they have been fined even though someone else was driving their cars at the time. They maintain that Chicago's system violates the equal protection and due process clauses of the Constitution's fourteenth amendment. The district court held otherwise and entered summary judgment for the defendants. 2008 U.S. Dist. LEXIS 3933 (N.D. Ill. Jan. 16, 2008).

Because all plaintiffs had an opportunity to present their contentions in the administrative process, and then to state court, the City might well have had a good argument that claim preclusion bars this litigation. Litigants can't reserve federal issues for a federal court. See *San Remo Hotel, L.P. v. San Francisco*, 545 U.S. 323 (2005). But the City has not advanced this affirmative defense. See David P. Currie, *Res Judicata: The Neglected Defense*, 45 U. Chi. L. Rev. 317 (1978). Nor has the City argued that a federal court should abstain from interfering in the citation-adjudication system. See *Younger v. Harris*, 401 U.S. 37 (1971), and its successors. If the case were at all complex, we might abstain whether asked to do so or not—for a litigant can't wait out state processes and then turn to federal court, see *Hicks v. Miranda*, 422 U.S. 332 (1975); *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975)—but the City's enforcement apparatus is simple and the federal law straightforward.

Plaintiffs contend that vicarious liability offends the substantive component of the due process clause, but that

argument is a dud. Substantive due process depends on the existence of a fundamental liberty interest, see *Washington v. Glucksberg*, 521 U.S. 702, 719–22 (1997), and no one has a fundamental right to run a red light or avoid being seen by a camera on a public street. The interest at stake is a $90 fine for a traffic infraction, and the Supreme Court has never held that a property interest so modest is a fundamental right. Plaintiffs insist that, if a law is arbitrary or capricious, then the absence of a fundamental right does not matter. They do not cite any decision of the Supreme Court for that proposition; none is to be found. *Glucksberg* and the Court's other opinions are adamant: only state action that impinges on fundamental rights is subject to evaluation under substantive due process. If a law is arbitrary, then it might flunk the rational-basis test that applies to all legislation, but this differs (fundamentally) from substantive due process. See *National Paint & Coatings Ass'n v. Chicago*, 45 F.3d 1124 (7th Cir. 1995); *Saukstelis v. Chicago*, 932 F.2d 1171 (7th Cir. 1991).

Is it rational to fine the owner rather than the driver? Certainly so. A camera can show reliably which cars and trucks go through red lights but is less likely to show who was driving. That would make it easy for owners to point the finger at friends or children—and essentially impossible for the City to prove otherwise. A system of photographic evidence reduces the costs of law enforcement and increases the proportion of all traffic offenses that are detected; these benefits can be achieved only if the owner is held responsible.

This need not mean that the owner bears the economic loss; an owner can insist that the driver reimburse the

outlay if he wants to use the car again (or maintain the friendship). Legal systems often achieve deterrence by imposing fines or penalties without fault. Consider, for example, a system that subjects to forfeiture any car used in committing a crime, even though the owner may have had nothing to do with the offense. *Bennis v. Michigan*, 516 U.S. 442 (1996), holds that such a system is constitutional, because it increases owners' vigilance. Similarly, *Department of Housing & Urban Development v. Rucker*, 535 U.S. 125 (2002), holds that it is constitutional to evict a tenant from public housing because of a guest's misbehavior; the threat of eviction induces owners to exercise control over their guests (and not to invite people whose conduct they will be unable to influence). *United States v. Boyle*, 469 U.S. 241 (1985), offers yet another example. The Court held it proper to impose penalties on a taxpayer whose return is false, even when an attorney or accountant is responsible for the error; the Court concluded that the threat of a penalty will cause taxpayers to choose their advisers more carefully—and, when the taxpayer is the victim of an expert's blunder, a malpractice suit will shift the expense to the person whose errors led to the exaction. Fining a car's owner is rational for the same reasons: Owners will take more care when lending their cars, and often they can pass the expense on to the real wrongdoer.

That the City's system raises revenue does not condemn it. Taxes, whether on liquor or on running red lights, are valid municipal endeavors. Like any other exaction, a fine does more than raise revenue: It also discourages the taxed activity. A system that simultaneously raises money and improves compliance with traffic laws has much to

recommend it and cannot be called unconstitutionally whimsical.

Plaintiffs insist that the City's approach must be irrational because Illinois fines drivers, rather than owners, for moving violations. That a state does things one way does not mean that it is irrational for a city to do things a different way; both can be rational. The Constitution does not demand that units of state government follow state law. See *Archie v. Racine*, 847 F.2d 1211, 1216–17 (7th Cir. 1988) (en banc) (collecting cases). A federal court assumes that the action is authorized as a matter of local law and asks only whether federal law forbids what the city or state has done. See *Gordon v. Degelmann*, 29 F.3d 295 (7th Cir. 1994). Whether state law permits that action in the first place is a question for state courts, under their own law. See *Minnesota v. Kuhlman*, 729 N.W.2d 577 (2007) (holding a Minneapolis ordinance similar to Chicago's invalid, as a matter of Minnesota law, because of the difference in the state's and city's approaches to enforcement). The district court dismissed without prejudice all state-law claims, so that plaintiffs may pursue them in state court.

According to plaintiffs, the distinction between lessors and other owners is irrationally discriminatory. The distinction is sensible, however. A lessee (for example, someone who leases a car for three years from a dealer) is treated for many purposes as the car's owner; a financing lease is equivalent to a sale with a retained security interest. The City's goal is to impose the fine on the person who according to readily available legal documents is in charge of the car, and therefore either responsible for the

violation or able to determine whether the car is driven by law-abiding persons. Plaintiffs observe that owners won't always have control: A parent who lives in California may lend a car to a child attending college in Chicago, or a divorce decree may require one spouse to supply a car for the other. True enough, but review under the rational-basis doctrine tolerates an imprecise match of statutory goals and means. Broad ("overinclusive") categories are valid even if greater precision, and more exceptions or subcategories, might be better, for the task of deciding how much complexity (at what administrative expense) is justified is legislative rather than judicial. See *Vance v. Bradley*, 440 U.S. 93, 108–09 (1979).

Only a few words are required to dispatch plaintiffs' final argument: That the procedures (including the rules of evidence) that Chicago uses to adjudicate citations violate the due process clause. To a substantial extent plaintiffs' argument rests on the incorrect premise that only the defenses listed in Chicago Code §9-102-020, such as the theft of the vehicle, are available at the hearing; they complain that other defenses have been wiped out. Chicago responds that all defenses available under state law (including an obscured signal or yielding the right-of-way to an ambulance) are open in the hearing. See Chicago Code §9-24-080(a). None of the plaintiffs has offered such a defense and had it rejected; federal courts do not issue advisory opinions on situations that do not affect the litigants. If a hearing officer ever rejects a valid defense, a state court can set the decision aside.

Plaintiffs want us to consider and upset the rules of evidence and other procedures used at the hearings. They

might as well ask a court to address, in one go, all constitutional questions that could be raised by every possible application of the Federal Rules of Evidence. Objections to procedures used at a hearing must be made there (and then on review in state court), where they can be evaluated in context. It is enough to say that photographs are at least as reliable as live testimony, that the due process clause allows administrative decisions to be made on paper (or photographic) records without regard to the hearsay rule, see *Richardson v. Perales*, 402 U.S. 389 (1971), and that the procedures Chicago uses are functionally identical to those it uses to adjudicate parking tickets, a system sustained in *Van Harken v. Chicago*, 103 F.3d 1346 (7th Cir. 1997).

AFFIRMED