# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**_Fischetti v. Village of Schaumburg_, 2012 IL App (1st) 111008**

---

| | |
|---|---|
| Appellate Court Caption | GINA FISCHETTI, Plaintiff-Appellant, v. THE VILLAGE OF SCHAUMBURG, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-11-1008 |
| Filed | March 23, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action challenging a village's use of automated cameras to prosecute the violation of red lights, the trial court properly entered summary judgment for defendant village on the grounds that the Illinois statutes authorizing such cameras provided for the administrative adjudication of violations and that civil penalties did not trigger plaintiff's right to a jury trial. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-12523; the Hon. Carolyn Quinn, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Brianne M. Connell and James P. Newman, both of James P. Newman & Associates, LLC, of St. Charles, for appellant.

Jack M. Siegel and Andrew Fiske, both of Holland & Knight LLP, of Chicago, for appellee.

Panel                JUSTICE McBRIDE delivered the judgment of the court, with opinion.
                     Justices J. Gordon and Howse concurred in the judgment and opinion

## OPINION

¶ 1    In 2009, defendant Village of Schaumburg, Illinois, used automated cameras at the intersection of Meacham and Woodfield Roads to photograph cars that ran red light traffic signals. Schaumburg's traffic code provided that a car's owner was liable for the violation of a red light regardless of who was driving, unless the car was previously reported stolen. Plaintiff Gina Fischetti, a resident of St. Charles, Illinois, was fined $100 as the owner of a car that ran a red light. She complained to the circuit court that Schaumburg adjudicated the alleged violation through an administrative hearing process even though the municipality had no statutory authority to utilize that method and had disregarded her statutory and constitutional rights to a trial by jury. The circuit court granted summary judgment to Schaumburg on grounds that Illinois laws which authorized automated red light cameras also expressly provided for violations to be administratively adjudicated and that civil penalties did not trigger constitutional and statutory rights to a jury of one's peers. Fischetti appeals.

¶ 2    This action began in the circuit court of Cook County when Fischetti filed a two-count complaint seeking declaratory judgment and administrative review. Attached to her pleading was a "Red Light Violation Notice" issued by Schaumburg on January 26, 2009, which included two photographs of her vehicle taken on January 19, 2009, at 2:01:50 p.m. as it proceeded through a snowy intersection 42.2 seconds after the signal light had changed to red and one close-up photograph of the vehicle's license plate. The notice to Fischetti cited title 7, chapter 78, of Schaumburg's municipal code and stated this "photographic record *** constitutes *prima facie* evidence of a violation," "all individuals appearing on the vehicle's license plate registration are legally responsible for this violation," and "YOU MUST EITHER PAY THE APPLICABLE [$100] FINE OR CONTEST THIS CIVIL VIOLATION NOTICE [by February 16, 2009]." The notice informed Fischetti that she had the option of contesting by mail or at an "in-person hearing." On February 8, 2009, she contested in a letter which stated "you do not have jurisdiction to issue me a citation for disobeying a traffic control signal." A hearing officer took this into consideration and on February 26, 2009, issued a "Notice of Findings[,] Decision and Order" indicating lack of jurisdiction was not one of the recognized defenses to the violation and that Fischetti was liable for disobeyance

of the traffic control signal. Fischetti paid the $100 fine.

¶ 3    In count I of the complaint Fischetti filed on March 19, 2009, she sought four judicial declarations. First, a declaration that Schaumburg did not have jurisdiction to administratively adjudicate her traffic violation due to section 1-2.1-2 of the Illinois Municipal Code, which provides that a municipality may administratively adjudicate local code violations "except for *** any offense under the Illinois Vehicle Code or a similar offense that is a traffic regulation governing the movement of vehicles." 65 ILCS 5/1-2.1-2 (West 2006); 625 ILCS 5/1-100 *et seq.* (West 2006). She also sought a declaration that section 103-6 of the Illinois Code of Criminal Procedure of 1963 and "the constitution" entitled her to a trial by jury regarding the alleged civil violation. 725 ILCS 5/103-6 (West 2006). Then, without any further allegations, she asked the court to declare that the administrative process "violate[d] due process" and that the judgment of liability was void *ab initio*. Fischettti styled count II as a request for administrative review and alleged that a lack of jurisdiction entitled her to a $100 judgment.

¶ 4    After Fischetti and Schaumburg filed and briefed cross-motions for summary judgment, Fischetti filed an amended complaint which added class allegations to her original pleading. The circuit court heard oral arguments, granted Schaumburg's motion for summary judgment, and then struck Fischetti's cross-motion as moot. As we summarized above, the court reasoned that state laws expressly provide for automated red light tickets to be administratively adjudicated and that civil penalties do not trigger any right to a jury. Fischetti's motion for reconsideration was unsuccessful. She now seeks a different outcome on appeal.

¶ 5    The interpretation of a statute and the entry of summary judgment are questions of law that we review *de novo* without any deference to the trial court's interpretation. *Founders Insurance Co. v. American Country Insurance Co.*, 366 Ill. App. 3d 64, 69, 851 N.E.2d 120, 125 (2006). Summary judgment is properly granted when the pleadings, affidavits, deposition transcripts and exhibits on file, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Founders Insurance*, 366 Ill. App. 3d at 69, 851 N.E.2d at 125; *Catom Trucking, Inc. v. City of Chicago*, 2011 IL App (1st) 101146, ¶ 9, 952 N.E.2d 170, 173.

¶ 6    We are not persuaded by Fischetti's primary argument on appeal. Fischetti has simply disregarded pertinent statutes when she argues there is no authority for Schaumburg to use an administrative process in conjunction with its automated red light cameras. She has accurately quoted section 1-2.1-2 of the Illinois Municipal Code, which authorizes administrative adjudication of local code violations "except for *** offense[s] under the Illinois Vehicle Code or a similar offense that is a traffic regulation governing the movement of vehicles." 65 ILCS 5/1-2.1-2 (West 2006). See *Catom Trucking*, 2011 IL App (1st) 101146, 952 N.E.2d 170 (finding that section 1-2.1-2 stripped city's department of administrative hearings of jurisdiction to adjudicate citations for operating overweight trucks on Chicago streets, as citations were for moving violations). She characterizes that section of the Municipal Code as "the enabling statute," but then fails to reconcile it with sections of the Illinois Vehicle Code which specifically allowed for the procedure Schaumburg

followed once it photographed her vehicle running the red light at Meacham and Woodfield. The Vehicle Code, however, was at the heart of Schaumburg's motion for summary judgment and the court order now on appeal. Citizens cannot pick and choose which statutes apply to them. Statutes are read together and construed in a harmonious fashion. *Schaumburg State Bank v. Bank of Wheaton*, 197 Ill. App. 3d 713, 720, 555 N.E.2d 48, 52 (1990); *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 458-59, 781 N.E.2d 261, 267 (2002) ("A court presumes that the legislature intended that two or more statutes which relate to the same subject are to be read harmoniously so that no provisions are rendered inoperative."). Furthermore, it is presumed that the General Assembly acts rationally and with full knowledge of all previous enactments and will not enact a law which contradicts a prior statute unless it expressly repeals the prior language. *State of Illinois v. Mikusch*, 138 Ill. 2d 242, 247-28, 562 N.E.2d 168, 170 (1990). In the unlikely event, however, that a general statute and specific statute on the same subject are conflicting, the specific language will control. *Mikusch*, 138 Ill. 2d at 254, 562 N.E.2d at 173.

¶ 7       The Municipal Code section that Fischetti cites was already in effect when the General Assembly enacted legislation in 2006 that authorized the deployment of red light cameras in Illinois; created a civil, noncriminal penalty; and provided for administrative adjudications in which it is presumed that registered vehicle owners are liable for violations. Section 11-208 of the Vehicle Code, which concerns "Powers of local authorities," was amended by the state legislature effective May 22, 2006, with the addition of paragraph (f), which states, "A municipality or county designated in Section 11-208.6 may enact an ordinance providing for an automated traffic law enforcement system to enforce violations of this Code or a similar provision of a local ordinance and imposing liability on a registered owner of a vehicle used in such a violation." Pub. Act 94-795, § 5 (eff. May 22, 2006); 625 ILCS 5/11-208.6 (West 2006). Section 11-208.3 of the Vehicle Code, which had previously provided for "a system of administrative adjudication of vehicular standing and parking violations and vehicle compliance violations," was amended to also encompass "automated traffic law violations as defined in Section 11-208.6." Pub. Act 94-795, § 5 (eff. May 22, 2006); 625 ILCS 5/11-208.3 (West 2006). New language authorized "[any municipality] to operate an administrative adjudication system" and stated the municipality should provide "service of an automated traffic law violation notice by mail to the address of the registered owner of the cited vehicle." Pub. Act 94-795, § 5 (eff. May 22, 2006) (adding 625 ILCS 5/11-208.3(b)(3) (West 2006)). Section 11-208.6 was an entirely new addition to the traffic laws and it stated in pertinent part:

"Sec. 11-208.6. Automated traffic law enforcement system.

(a) As used in this Section, 'automated traffic law enforcement system' means a device with one or more motor vehicle sensors working in conjunction with a red light signal to produce recorded images of motor vehicles entering an intersection against a red signal indication in violation of Section 11-306 of this Code or a similar provision of a local ordinance." Pub. Act 94-795, § 5 (eff. May 22, 2006) (adding 625 ILCS 5/11-208.6 (West 2006)).

The statutory section cited there, section 11-306, already provided for the familiar red, yellow, and green light traffic-control system and said in pertinent part:

"§ 11-306. Traffic-control signal legend. Whenever traffic is controlled by traffic-control signals exhibiting different colored lights or color lighted arrows, successively one at a time or in combination, only the colors green, red and yellow shall be used, except for special pedestrian signals carrying a word legend, and the lights shall indicate and apply to drivers of vehicles and pedestrians as follows:

* * *

(c) Steady red indication.

1. Except as provided in paragraph 3 of this subsection (c), vehicular traffic facing a steady circular red signal alone shall stop at a clearly marked stop line, but if there is no such stop line, before entering the crosswalk on the near side of the intersection, or if there is no such crosswalk, then before entering the intersection, and shall remain standing until an indication to proceed is shown.

2. Except as provided in paragraph 3 of this subsection (c), vehicular traffic facing a steady red arrow signal shall not enter the intersection to make the movement indicated by the arrow and, unless entering the intersection to make a movement permitted by another signal, shall stop at a clearly marked stop line, but if there is no such stop line, before entering the crosswalk on the near side of the intersection, or if there is no such crosswalk, then before entering the intersection, and shall remain standing until an indication permitting the movement indicated by such red arrow is shown.

3. Except when a sign is in place prohibiting a turn and local authorities by ordinance or State authorities by rule or regulation prohibit any such turn, vehicular traffic facing any steady red signal may cautiously enter the intersection to turn right, or to turn left from a one-way street into a one-way street, after stopping as required by paragraph 1 or paragraph 2 of this subsection. After stopping, the driver shall yield the right of way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time such driver is moving across or within the intersection or junction or roadways. Such driver shall yield the right of way to pedestrians within the intersection or an adjacent crosswalk." 625 ILCS 5/11-306 (West 2006).

The new legislation added paragraph (d) to section 11-208.6 to require that a written notice of a violation specify "the amount of the civil penalty imposed" and "be delivered to the registered owner of the vehicle, by mail." Pub. Act 94-795, § 5 (eff. May 22, 2006); 625 ILCS 5/11-208.6 (West 2006). And finally, the General Assembly made it clear that this new statutory scheme would not be subject to the prohibition in section 1-2.1-2 of the Municipal Code against the administrative adjudication of moving violations. 65 ILCS 5/1-2.1-2 (West 2006). In paragraph (j) of section 11-208.6, the General Assembly stated, "A violation for which a civil penalty is imposed under this Section is not a violation of a traffic regulation governing the movement of vehicles and may not be recorded on the driving record of the owner of the vehicle." Pub. Act 94-795, § 5 (eff. May 22, 2006); 625 ILCS 5/11-208.6(j) (West 2006). By changing four sections of the Vehicle Code and adding three entirely new sections (Pub. Act 94-795 (eff. May 22, 2006)), the state legislature comprehensively

provided for the use of automated red light cameras and an administrative process to impose civil penalties on registered vehicle owners when their vehicles are used to commit red light camera violations.

¶ 8        On March 25, 2008, Schaumburg passed local ordinance No. 08-045, which tracked the language of the new state laws and established an automated traffic law enforcement system, including administrative adjudications, within its geographic boundaries. Schaumburg joined a number of jurisdictions that have deployed cameras and sensors to detect traffic violations without a law enforcement officer present on the scene. See *City of Davenport v. Seymour*, 755 N.W.2d 533, 536 (Iowa 2008) (indicating red light cameras are operating in 45 countries and speed detection systems are in use in 75 countries). Schaumburg expressly referenced chapter 78 of its local ordinances in the violation notice it issued to Fischetti as the registered owner of the vehicle that triggered the red light camera at Meacham and Woodfield Roads on January 19, 2009, at 2:01:50 p.m.

¶ 9        Fischetti argues Schaumburg cannot rely on the Vehicle Code unless it expressly references those state laws in its local legislation, but she cites no authority which requires a municipality to refer to an enabling statute in the body of its local ordinances.

¶ 10        In our opinion, the meaning of the state and local laws is apparent and does not require further explanation. We find there was both state and municipal authorization for the administrative procedure that Schaumburg applied to Fischetti and that her reliance on section 1-2.1-2 was misplaced. 65 ILCS 5/1-2.1-2 (West 2006). We reject her main argument for reversal.

¶ 11        Fischetti next contends that she was ticketed pursuant to section 11-306(c) of the Illinois Vehicle Code and that this statute refers to drivers, meaning that Schaumburg bore the burden of proving that she was the driver of the vehicle, not merely its registered owner, when the violation was recorded. She made similar arguments during the circuit court proceedings, but as the judge pointed out, Fischetti did not plead this theory in her original or amended complaints and we need not address it. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305, 891 N.E.2d 839, 845 (2008) (Illinois is a fact-pleading jurisdiction); *Kincaid v. Ames Department Stores, Inc.*, 283 Ill. App. 3d 555, 568, 670 N.E.2d 1103 (1996) ("A plaintiff fixes the issues in controversy and the theories upon which recovery is sought by the allegations in her complaint. [Citation.] It is a fundamental rule, with no exceptions, that a party must recover on and according to the case she has made for herself by her pleadings.").

¶ 12        In any event, Fischetti's factual premise is incorrect, because she was not issued a ticket for violating section 11-306–the exhibits attached to her complaints indicate Fischetti was cited pursuant to a local ordinance which incorporated section 11-306. 625 ILCS 5/11-306 (West 2006).

¶ 13        Furthermore, we do not read section 11-306 to apply to drivers only. The relevant portions of section 11-306 (quoted above) use the terms "drivers" and "vehicular traffic" interchangeably. More specifically, section 11-306(c) states that traffic-control signals "apply to drivers of vehicles and pedestrians," "vehicular traffic facing a steady circular red signal alone shall stop," "vehicular traffic facing a steady red arrow signal shall not enter the intersection," and "vehicular traffic facing any steady red signal may cautiously enter the

intersection to turn right" after "the driver *** yield[s] the right of way." 625 ILCS 5/11-306 (West 2006). Fischetti's exclusive focus on the word "drivers" in section 11-306 disregards the principle of statutory construction that statutory terms are construed in context. *In re Application of the County Collector*, 356 Ill. App. 3d 668, 670, 826 N.E.2d 951, 953 (2005) (statutory terms are given their plain meaning and construed in context). Section 11-306's wording is general enough to be applied to the registered owners of vehicles as well as the drivers.

¶ 14    Fischetti also fails to reconcile section 11-306 with the red light camera legislation adopted in 2006. Her argument is contrary to the principle of statutory construction that related laws must be read together and harmonized and the principle of statutory construction that every word the legislature has used is to be given effect, if possible. *Schaumburg State Bank*, 197 Ill. App. 3d at 720, 555 N.E.2d at 52 (it is presumed that statutes addressing the same subject are governed by one spirit and a single policy and that the legislature intended consistency and harmony in its various enactments); *Knolls Condominium Ass'n*, 202 Ill. 2d at 458-59, 781 N.E.2d at 267 (two or more statutes which relate to the same subject are to be read harmoniously so that no provisions are rendered inoperative); *In re Application of the County Collector*, 356 Ill. App. 3d 668, 670, 826 N.E.2d 951, 953-54 (2005) (statutes should be construed, if possible, so that no part is rendered superfluous or meaningless; courts should not create exceptions or limitations which the legislature did not intend). As discussed above, Fischetti was ticketed pursuant to a local ordinance which was authorized by comprehensive state legislation and mirrored the wording of those new state laws. The Illinois red light camera legislation specifically provided for ticketing the registered owner of a vehicle photographed by an automated red light camera, regardless of who was driving. See 625 ILCS 5/11-208.6(d) (West 2006). The Illinois legislation also indicated notice shall be delivered to the registered owner of the vehicle within 30 days after the Secretary of State notifies the municipality or county of the identity of the owner of the vehicle. See 625 ILCS 5/11-208.6(d) (West 2006). The Illinois law further provided "[i]f a person charged with a traffic violation, as a result of the automated traffic law enforcement system, does not pay or successfully contest the civil penalty resulting from that violation, the Secretary of State shall suspend the driving privileges of the registered owner of the vehicle." 625 ILCS 5/11-208.6(e) (West 2006). This plain language indicates Schaumburg was not required to prove Fischetti was personally driving her vehicle when it proceeded against the traffic signal at Meacham and Woodfield.

¶ 15    Fischetti also contends that some of her rights under the Illinois Constitution were violated, but we find that she waived these theories of relief by failing to plead them in the circuit court. She first contends that the adjudication process violated her due process rights. The constitutional guarantee of due process encompasses both procedural and substantive due process. *Segers v. Industrial Comm'n*, 191 Ill. 2d 421, 433-34, 732 N.E.2d 488, 496 (2000). Procedural due process is about the specific procedures that have been used to deny a person's life, liberty, or property. *Segers*, 191 Ill. 2d at 434, 732 N.E.2d at 496. Procedural due process "protect[s] persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty or property." *Segers*, 191 Ill. 2d at 434, 732 N.E.2d at 496. Substantive due process prevents the government from taking certain action even if it

does provide proper procedural safeguards. *Casanova v. City of Chicago*, 342 Ill. App. 3d 80, 91, 793 N.E.2d 907, 917 (2003). *In re Perona*, 294 Ill. App. 3d 755, 760, 690 N.E.2d 1058, 1062 (1998) (stating that procedural due process governs methods by which a protected interest may be deprived and that substantive due process imposes absolute limits on the state's ability to act without regard to applicable procedural protections). Fischetti's only reference to due process was in the prayer of her pleading, where she vaguely asked the court to declare, "the Village of Schaumburg's administrative proceedings described herein violate due process." It is unclear from this wording whether she was asserting a procedural due process claim, a substantive due process claim, or, perhaps, both; and it was unclear what facts, if any, were alleged in support of this claim. Statutes and municipal ordinances are presumed constitutional and a party challenging their validity bears the burden of rebutting that presumption and clearly demonstrating a constitutional violation. *Napleton*, 229 Ill. 2d at 306, 891 N.E.2d at 846. Furthermore, as a fact-pleading jurisdiction, Illinois does not permit plaintiffs to make vague allegations and then introduce specific theories as it suits them during litigation. *Kincaid*, 283 Ill. App. 3d at 568, 670 N.E.2d at 1112.

¶ 16    Waiver aside, there has been no procedural due process or substantive due process violation. Procedural due process generally refers to notice and the opportunity to be heard. *Bartlow v. Shannon*, 399 Ill. App. 3d 560, 570, 927 N.E.2d 88, 98 (2010). Procedural due process rights include a right to present evidence and argument, a right to cross-examine witnesses, and impartiality in rulings upon the evidence which is offered. *Bartlow*, 399 Ill. App. 3d at 570, 927 N.E.2d at 98. It is undisputed that Fischetti received written notification of the proceedings against her, that she was offered the opportunity to contest through the mail or at a hearing, that she chose to dispute the allegations by sending a letter to the municipality regarding its "jurisdiction," and that her letter was taken into consideration by the hearing officer who found her liable for the violation and responsible for the $100 fine. The record, thus, indicates that Fischetti was afforded procedural due process. In *Idris*, the court rejected a substantive due process challenge to a Chicago ordinance which, like the Schaumburg ordinance, provided for fining a car's owner for a red light camera violation no matter who was driving the car. *Idris v. City of Chicago*, 552 F.3d 564 (7th Cir. 2009). The car owners there complained they were fined even though someone else was driving their cars at the time and that the imposition of vicarious liability was a substantive due process violation. *Idris*, 552 F.3d at 565. Characterizing the substantive due process argument as a "dud," the court reasoned:

> "Substantive due process depends on the existence of a fundamental liberty interest, [citation], and no one has a fundamental right to run a red light or avoid being seen by a camera on a public street. The interest at stake is a $90 fine for a traffic infraction, and the Supreme Court has never held that a property interest so modest is a fundamental right." *Idris*, 552 F.3d at 566.

Fischetti contends *Idris* is not binding authority because it addressed federal rights, rather than state or local rights. In our opinion, however, the federal court's reasoning is directly applicable to a substantive due process argument based on the Illinois Constitution and we adopt it as our own. Since no fundamental liberty interest was implicated by the traffic signal and automated camera in Schaumburg and the $100 fine imposed on Fischetti, there could

be no substantive due process violation.

¶ 17    Continuing, the *Idris* court also considered whether fining the registered owner of a vehicle when his or her vehicle triggers a red light camera is somehow arbitrary and capricious and thus could not pass the rational basis test that applies to all legislation:

> "Is it rational to fine the owner rather than driver? Certainly so. A camera can show reliably which cars and trucks go through red lights but is less likely to show who was driving. That would make it easy for owners to point the finger at friends or children–and essentially impossible for the City to prove otherwise. A system of photographic evidence reduces the costs of law enforcement and increases the proportion of all traffic offenses that are detected; these benefits can be achieved only if the owner is held responsible.
>
> This need not mean that the owner bears the economic loss; an owner can insist that the driver reimburse the outlay if he wants to use the car again (or maintain the friendship). Legal systems often achieve deterrence by imposing fines or penalties without fault. Consider, for example, a system that subjects to forfeiture any car used in committing a crime, even though the owner may have had nothing to do with the offense. *** [S]uch a system is constitutional, because it increases owners' vigilance. Similarly, *** it is constitutional to evict a tenant from public housing because of a guest's misbehavior; the threat of eviction induces owners to exercise control over their guests (and not invite people whose conduct they will be unable to influence). *** [In yet another example,] [t]he Court held it proper to impose penalties on a taxpayer whose return is false, even when an attorney or accountant is responsible for the error; the Court concluded that the threat of a penalty will cause taxpayers to choose their advisers more carefully–and, when the taxpayer is the victim of an expert's blunder, a malpractice suit will shift the expense to the person whose errors led to the exaction. Fining a car's owner is rational for the same reasons: Owners will take more care when lending their cars, and often they can pass the expense on to the real wrongdoer." *Idris*, 552 F.3d at 566.

See also Cooper J. Strickland, *Lights, Camera ... Ticket: Red Light Cameras After Idris v. City of Chicago*, 10 N.C. J.L. & Tech. On. 119 (2009) (indicating red light camera technology is widespread and was not impeded by *Idris*).

¶ 18    Fischetti next contends her constitutional right to equal protection was violated because she did not receive the presumption of innocence that would have been given to a driver stopped by a police officer for violating section 11-306. However, there is no language in Fischetti's pleading which could be construed as an equal protection claim. Since she did not plead his theory, she cannot introduce it into the proceedings whenever it suits her to do so. *Kincaid*, 283 Ill. App. 3d at 568, 670 N.E.2d at 1112 (plaintiff waived issues not presented in complaint). We also point out that this argument is based on the faulty factual premise that Fischetti was ticketed for violating section 11-306 rather than the separate legislation specific to red light cameras.

¶ 19    Finally, Fischetti's contention that she had a constitutional or statutory right to a jury trial is based on the faulty premise that she was accused of a criminal act. Section 11-208.6(d) indicates automated red light violations incur civil penalties. 625 ILCS 5/11-208.6(d) (West

2006). What occurred was not a criminal offense; it was a civil violation and, therefore, not subject to the protections, presumptions, and standard of proof afforded in criminal prosecutions. See *Van Harken v. City of Chicago*, 103 F.3d 1346, 1350 (7th Cir. 1997) (indicating the City of Chicago did not violate due process by reclassifying parking violations from criminal offenses to civil violations and reducing the procedural safeguards required in criminal proceedings). Accordingly, Fischetti's reliance on section 103-6 of the Code of Criminal Procedure of 1963 is unavailing. 725 ILCS 5/103-6 (West 2006).

¶ 20 For these reasons, we reject Fischetti's appeal and affirm the judgment of the circuit court.

¶ 21 Affirmed.