# Illinois Official Reports

## Appellate Court

*Farrar v. City of Rolling Meadows*, 2013 IL App (1st) 130734

| | |
|---|---|
| Appellate Court Caption | MARK ALAN FARRAR, Plaintiff-Appellant, v. THE CITY OF ROLLING MEADOWS, STEPHANIE POSEY, and PETER PACIONE, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-0734 |
| Filed | December 20, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The judgment of an administrative hearing officer in defendant city finding plaintiff liable for a red light violation based on turning right against a red light without making a complete stop was affirmed over plaintiff's contentions that the city's hearing unit lacked subject matter jurisdiction because no valid, *bona fide*, verified complaint or information was filed and that the unit lacked personal jurisdiction over plaintiff, since the city's automated traffic law enforcement system applied and pursuant to that system, the city was not required to file or serve a written sworn pleading or complaint after a notice of violation had been mailed to plaintiff. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-M-33291; the Hon. Sandra Tristano, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

No brief filed for appellant.

No brief filed for appellees.

Panel

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice Palmer concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Mark Alan Farrar appeals from a decision of the circuit court affirming the judgment of an administrative hearing officer in the city of Rolling Meadows code hearing unit, which found him liable for a red light violation in the city of Rolling Meadows. On appeal, plaintiff contends that: (1) the code hearing unit lacked subject matter jurisdiction over his case because the city of Rolling Meadows failed to file a valid, *bona fide*, verified complaint or information; and (2) the code hearing unit lacked personal jurisdiction over his person. We affirm.

¶ 2    In July 2012, an automated traffic law enforcement system video recorded a vehicle registered to plaintiff turning right against a red light without making a complete stop in the city of Rolling Meadows, Illinois (Rolling Meadows). The record contains a copy of a red light violation notice from Rolling Meadows, Illinois, addressed to plaintiff and dated July 16, 2012. According to the notice, at approximately 1:45 p.m. on July 7, 2012, plaintiff's vehicle disobeyed a traffic control signal at Euclid Avenue and Hicks Road in Rolling Meadows, Illinois, in violation of "Chapter 3 Article IV, 07-37." The notice includes two photographs of a vehicle making a right turn at the intersection while the light is red and one close-up photograph of the vehicle's license plate. The video recording, which was also included in the record on appeal, shows the same vehicle turning right against the red light without making a complete stop. The notice states: "You must either pay the applicable fine or contest this civil violation notice."

¶ 3    The record also contains a notice to appear at a civil hearing from Rolling Meadows, dated August 2, 2012, and addressed to plaintiff. The notice states: "Pursuant to your request, you are hereby notified to appear before the Administrative Hearing Officer at the hearing location, date, and time shown below to respond to the following administrative complaint."

¶ 4    On August 23, 2012, plaintiff appeared at the hearing. An audio recording of the hearing was included in the record on appeal. The administrative hearing officer, Stephanie Posey, began the hearing by asking whether plaintiff was pleading liable or not liable for the violation. Plaintiff said he wanted to ask a few questions before pleading and then asked to see "the

- 2 -

information that was used." He questioned whether the citation was the document that was being used to prosecute the case. The city prosecutor, Peter Pacione, explained to plaintiff that the "charging document you are referring to is the notice of violation document you received pursuant to the statute, which contains all the information required by the statute." Plaintiff stated that the information used should have a "bonafide signature." The city prosecutor explained that the statute did not require a signature. Plaintiff disagreed, saying that any hearing must be "instituted upon filing of a written sworn pleading or complaint by any authorized official" and felt that had not been done in his case. Plaintiff then made an oral motion to dismiss his case arguing that the "hearing [unit] lack[ed] subject matter jurisdiction." Plaintiff's case was passed and recalled later at which time the city prosecutor told the administrative hearing officer that he had attempted to explain to plaintiff that his case was brought pursuant to a section of the Rolling Meadows code other than the one plaintiff was relying on. The administrative hearing officer agreed with Rolling Meadows and denied plaintiff's motion to dismiss. She found that the notice plaintiff received in the mail met the requirements of the applicable ordinance and Illinois law.

¶ 5 The administrative hearing officer proceeded with the hearing, and plaintiff again made an oral motion to dismiss. The administrative hearing officer explained that she had already denied his motion to dismiss. Plaintiff then refused to participate in the remainder of the hearing. The administrative hearing officer informed plaintiff he received sufficient notice of the hearing and had participated to that point and that she would proceed with the hearing. She invited and encouraged plaintiff to present a defense. The administrative hearing officer then played the video and noted on the audio recording that the video showed plaintiff's vehicle did not come to a complete stop before making a right turn during a red light. Plaintiff again refused to participate. The administrative hearing officer found the citation was valid on the basis of the video and entered a finding of liable.

¶ 6 Plaintiff also filed a written notice of motion to dismiss his case, alleging that "[p]ursuant to 725 ILCS 5/111-3(b) and Rolling Meadows Ordinance Code, Chapter 3, Article 2, Section 03-41" the hearing officer lacked subject matter jurisdiction over him.

¶ 7 On September 21, 2012, plaintiff filed a *pro se* complaint for administrative review in the circuit court. On November 8, 2012, plaintiff filed a notice of specification of errors, which noted that the hearing officer "was unable to show the Plaintiff a valid, bonafide, verified complaint or information" in his case.

¶ 8 On December 27, 2012, Rolling Meadows responded to plaintiff's specification of errors, arguing that there was "no requirement that the Notice of Violation for a violation of the Automated Traffic Law Enforcement System be a verified complaint or information."

¶ 9 On February 6, 2013, the circuit court affirmed the decision of the administrative hearing officer. Plaintiff filed a timely notice of appeal on March 1, 2013.

¶ 10 On appeal, plaintiff first argues that the code hearing unit lacked subject matter jurisdiction to hear his case because Rolling Meadows failed to present a "written, sworn pleading or complaint" or a "valid, bonafide, verified complaint or information."

¶ 11　　None of the defendants has filed a brief within the time allowed by rule; however, we may consider the case based on plaintiff's brief alone. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 12　　When a party appeals from the circuit court's decision on a complaint for administrative review, our role is to review the administrative decision rather than the decision of the circuit court. *Siwek v. Retirement Board of the Policeman's Annuity & Benefit Fund*, 324 Ill. App. 3d 820, 824 (2001). Judicial review of an administrative decision extends to all questions of law and fact presented by the entire record before the court. 735 ILCS 5/3-110 (West 2012). Any factual determinations from the administrative agency are considered *prima facie* true and correct. *Id.* "The standard of review, 'which determines the degree of deference given to the agency's decision,' turns on whether the issue presented is a question of fact, a question of law, or a mixed question of law and fact." *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 471 (2005) (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001)). In the present case, the facts are not in dispute and only a question of law has been presented. We review questions of law *de novo*. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006).

¶ 13　　The subject matter jurisdiction of a court refers to "the power of a court to hear and determine cases of the general class to which the proceeding in question belongs." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). With the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution. *Id.* Article VI, section 9, of our constitution provides that circuit courts have original jurisdiction over "all justiciable matters" with limited exceptions. Ill. Const. 1970, art. VI, § 9. Therefore, a court possesses subject matter jurisdiction if the plaintiff's complaint presents a "justiciable matter," which is a "controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334-35 (2002).

¶ 14　　Although circuit courts have original jurisdiction over all justiciable matters, the legislature has the power to vest exclusive original jurisdiction in an administrative agency through an explicit and comprehensive statutory scheme. *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 44; *Hastings Mutual Insurance Co. v. Ultimate Backyard, LLC*, 2012 IL App (1st) 101751, ¶ 16 (citing *Employers Mutual Cos. v. Skilling*, 163 Ill. 2d 284, 287 (1994)). The term "jurisdiction" does not strictly apply to an administrative body, but may be used to designate the administrative body's authority to act. *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243 (1989). With respect to an administrative agency, subject matter jurisdiction refers to the agency's power " 'to hear and determine causes of the general class of cases to which the particular case belongs.' " *Id.* (quoting *Newkirk v. Bigard*, 109 Ill. 2d 28, 36 (1985)). An administrative agency "only has the authorization given to it by the legislature through the statutes. Consequently, to the extent an agency acts outside its statutory authority, it acts without jurisdiction." *Business & Professional People*, 136 Ill. 2d at 243. Our first question

- 4 -

therefore is whether the code hearing unit had the statutory authority to hear and determine the general class of cases to which plaintiff's case belonged, a red light violation recorded by an automated traffic law enforcement system.

¶ 15    Section 11-208.6(a) of the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq.* (West 2012)) provides for the implementation of an automated traffic law enforcement system, which is defined as:

> "[A] device with one or more motor vehicle sensors working in conjunction with a red light signal to produce recorded images of motor vehicles entering an intersection against a red signal indication in violation of Section 11-306 of this Code or a similar provision of a local ordinance." 625 ILCS 5/11-208.6(a) (West 2012).

Section 11-306 of the Illinois Vehicle Code, cited in the section above, states in pertinent part that a vehicle facing a steady red signal or a steady red arrow signal "shall stop" before entering the intersection, "and shall remain standing" until a signal to proceed is shown, except as provided in paragraph 3 of the subsection. 625 ILCS 5/11-306(c)(1) (West 2012). Paragraph 3 of the subsection provides:

> "Except when a sign is in place prohibiting a turn and local authorities by ordinance or State authorities by rule or regulation prohibit any such turn, vehicular traffic facing any steady red signal may cautiously enter the intersection to turn right, or to turn left from a one-way street into a one-way street, after stopping as required by paragraph 1 *** of this subsection." 625 ILCS 5/11-306(c)(3) (West 2012).

The Illinois Vehicle Code also enables designated counties and municipalities to "enact an ordinance providing for an automated traffic law enforcement system to enforce violations of this Code or a similar provision of a local ordinance and imposing liability on a registered owner or lessee of a vehicle used in such a violation." 625 ILCS 5/11-208(f) (West 2012). Cook County, in which Rolling Meadows is located, is one of these designated counties. 625 ILCS 5/11-208.6(m) (West 2012).

¶ 16    Section 11-208.3(a) of the Illinois Vehicle Code enables any municipality or county to "provide by ordinance for a system of administrative adjudication of *** automated traffic law violations as defined in Section 11-208.6." 625 ILCS 5/11-208.3(a) (West 2012). The "administrative system shall only have authority to adjudicate civil offenses carrying fines not in excess of $500 or requiring the completion of a traffic education program, or both, that occur after the effective date of the ordinance adopting such a system under this Section." *Id.* The section further requires that any ordinance creating such a system "*shall* provide for" a notice of the automated traffic law regulation violation which shall include, in pertinent part, information as to the availability of a hearing in which the violation may be contested on its merits. (Emphasis added.) 625 ILCS 5/11-208.3(b)(2) (West 2012). On the subject of notice, section 11-208.6(d) also provides that the municipality having jurisdiction over a violation recorded by an automated traffic law enforcement system "*shall* issue a written notice of the violation to the registered owner of the vehicle as the alleged violator." (Emphasis added.) 625 ILCS 5/11-208.6(d) (West 2012).

¶ 17 Therefore, Rolling Meadows had the statutory authority to enact its own ordinance providing for an automated traffic law enforcement system, for imposing liability for a violation of the Illinois Vehicle Code or a similar local provision recorded by the system, and for adjudicating those violations. See *Fischetti v. Village of Schaumburg*, 2012 IL App (1st) 111008, ¶ 10 (finding that the village of Schaumburg's administrative adjudication of the plaintiff's red light violation was authorized by both the state and the municipality); *Amalgamated Transit Worker's Union, Local 241 v. Pace Suburban Bus Division*, 407 Ill. App. 3d 55, 56 (2011) (recognizing that the Illinois Vehicle Code granted municipalities the authority to create a system of administrative adjudication for violations captured by an automated traffic law enforcement system). Rolling Meadows acted upon this authority by enacting its automated traffic law enforcement system provisions in ordinance number 07-37, effective October 23, 2007, and codified in the Rolling Meadows city code. See City of Rolling Meadows Code of Ordinances, ch. 3, art. IV, §§ 3-67 to 3-81 (eff. Dec. 14, 2010) (City Code). Similar to the Illinois Vehicle Code, the City Code defines an "automated traffic law enforcement system" as:

> "[A] device(s) located within the City of Rolling Meadows with one or more motor vehicle sensors working in conjunction with a red light signal to produce recorded images of a motor vehicle entering an intersection against a steady red or flashing red signal or failing to come to a complete stop prior to turning right \*\*\* on a steady or flashing red signal indicating a violation of section 11-306 of the Illinois Vehicle Code or section 106-625 of the City Code[1]." City of Rolling Meadows Code of Ordinances, ch. 3, art. IV, § 3-68 (eff. Dec. 14, 2010).

Section 3-70 provides that, when the automated traffic enforcement system captures a violation, then "the duly appointed City of Rolling Meadows official ('city official') shall, for each alleged violation recorded, issue or direct to be issued a written notice of the violation to the registered owner or lessee of the vehicle as the alleged violator." City of Rolling Meadows Code of Ordinances, ch. 3, art. IV, § 3-70 (eff. Dec. 14, 2010). It also dictates that the notice of a violation "shall be delivered by first class mail, postage prepaid, within 30 days after the Illinois Secretary of State notifies the city or its designee of the identity of the registered owner or lessee of the vehicle." *Id*. In addition, the notice of violation must contain specific information, including: (1) the name and address of the registered owner of the vehicle; (2) the make of the vehicle and its registration number; (3) the violation charged with specific reference to the City Code or Illinois Vehicle Code section violated; (4) the location of the violation; (5) the date and time of the violation; (6) a copy of the recorded images; (7) the amount of the civil penalty imposed; (8) a statement that the recorded images constitute *prima facie* evidence of a violation or a red light signal violation; (9) a warning that failure to pay the penalty or request a hearing to contest liability results in an admission of liability; and (10) a statement that the registered owner "may elect to proceed either by paying the fine stated in the

---

[1]Section 106-625 of the City Code codifies for Rolling Meadows several different sections of the Illinois Vehicle Code, including section 11-306 of the Illinois Vehicle Code. See City of Rolling Meadows Code of Ordinances, ch. 106, art. II, § 106-625-5/11-306 (eff. Sept. 9, 2008).

notice of violation, by challenging the charge in court, at a city administrative hearing conducted pursuant to chapter 3 of the City Code of Ordinances or contesting the violation by mail." *Id*.

¶ 18 In light of the state statutory scheme and the local ordinance discussed above, it is clear that Rolling Meadows had the authority to create a code hearing unit and to allow that unit to hear cases involving these violations. See *Fischetti*, 2012 IL App (1st) 111008, ¶ 10; *Amalgamated Transit Worker's Union*, 407 Ill. App. 3d at 56. Therefore, the code hearing unit had subject matter jurisdiction to hear plaintiff's case. See *Business & Professional People*, 136 Ill. 2d at 243 (subject matter jurisdiction is the administrative agency's power " 'to hear and determine causes of the general class of cases to which the particular case belongs' " (quoting *Newkirk*, 109 Ill. 2d at 36)). Moreover, as specifically required by section 3-70 of the City Code, Rolling Meadows properly commenced the action by sending plaintiff a notice of violation through the mail, thereby complying with both the City Code and the Illinois Vehicle Code.

¶ 19 Plaintiff's primary argument on appeal is that the administrative action had to be commenced by a sworn pleading or complaint. He relies upon section 3-41(a) in article II of the City Code to support his claim. Although section 3-41 does require that certain administrative matters be commenced by a written sworn pleading or complaint, section 3-41 does not apply to hearing automated traffic law enforcement violations because those offenses are specifically exempted from article II. We only need to look at the language of the City Code to determine that the adjudication of violations captured by the automated traffic law enforcement system is governed by article IV of the City Code.

¶ 20 "The cardinal rule of statutory interpretation is to ascertain and give effect to the intent of the legislature." *Krautsack v. Anderson*, 223 Ill. 2d 541, 552 (2006). " 'To ascertain the legislative intent, the court must look first to the language of the statute, examining the language of the statute as a whole, and considering each part or section in connection with every other part or section.' " *Mermelstein v. Rothner*, 349 Ill. App. 3d 800, 803 (2004) (quoting *Antunes v. Sookhakitch*, 146 Ill. 2d 477, 484 (1992)).

¶ 21 Chapter 3 of the City Code is titled "Code Hearing Unit Adjudication" and the stated purpose of the chapter is to "provide for fair and efficient enforcement of city ordinances *** through an administrative adjudication of violations." City of Rolling Meadows Code of Ordinances, ch. 3, art. II, § 3-36 (eff. May 9, 2000). The chapter provides a framework for a system of adjudication within Rolling Meadows. *Id*. § 3-37 (eff. Feb. 24, 2009), § 3-39 (eff. Nov. 27, 2007). Article II of the chapter, which contains sections 3-36 through 3-45 of the City Code, creates and governs the general procedures for the Rolling Meadows code hearing unit. *Id*. §§ 3-36 to 3-45.

¶ 22 Section 3-37 in article II specifically creates within Rolling Meadows a code hearing unit, and authorizes the hearing unit to operate a "system of adjudication," which it defines as:

> "[T]he adjudication of a violation of any ordinance of the City of Rolling Meadows, including any and all violations of city vehicular standing, parking and condition of vehicle regulation (compliance) violations, municipal wheel tax licences and solid waste disposal fees *** within the city as may be allowed by law." City of Rolling Meadows Code of Ordinances, ch. 3, art. II, § 3-37.

However, significantly, section 3-37 then provides:

> "Notwithstanding the foregoing, *** offenses under the Illinois Vehicle Code (625 ILCS 5/1-100 et seq.) or similar City of Rolling Meadows offenses that are traffic regulations governing the movement of vehicles *** shall not be subject to adjudication under this article II." *Id*.

The language of article II specifically exempts any offense under the Illinois Vehicle Code which is a traffic regulation governing the movement of vehicles from adjudication under article II.

¶ 23    Section 11-306 of the Vehicle Code is a traffic regulation governing the movement of vehicles, including that vehicles must make a complete stop before turning right against a steady red light. 625 ILCS 5/11-306(c)(3) (West 2012).

¶ 24    In the same chapter of the Vehicle Code, section 11-202 provides that it is unlawful and a petty offense "for any person to *** fail to perform any act required in this Chapter." 625 ILCS 5/11-202 (West 2012). "Petty offense" is defined as "any offense for which a sentence of imprisonment is not an authorized disposition." 730 ILCS 5/5-1-17 (West 2012); see also 625 ILCS 5/1-158.5 (West 2012) (the word "petty offense" shall be defined as it is defined in article V of the Unified Code of Corrections (730 ILCS 5/1-1-1 *et seq*. (West 2012))). Therefore, the act of failing to perform the requirements of section 11-306 is an offense that is a traffic regulation governing the movement of vehicles. *Id*. In the city of Rolling Meadows, such an act is not subject to adjudication under article II of the City Code. City of Rolling Meadows Code of Ordinances, ch. 3, art. II, § 3-37.

¶ 25    Article IV of the City Code, sections 3-67 through 3-81, specifically governs the automated traffic law system and adjudication of violations captured by the system. City of Rolling Meadows Code of Ordinances, ch. 3, art. IV, §§ 3-67 to 3-81. Under that article, "City Code" means "the City of Rolling Meadows Code of Ordinances," and "Vehicle Code" means "the Illinois Vehicle Code (625 ILCS 5/1-101 et seq.)." City of Rolling Meadows Code of Ordinances, ch. 3, art. IV, § 3-68. The article also defines "disregarding a traffic control device" as "failure to stop and remain stopped before an intersection that is controlled by a red signal as provided by section 11-306 of the Vehicle Code." *Id*. Finally, the article defines "violation" specifically as: "a motor vehicle entering an intersection against a steady red or flashing signal or failing to come to a complete stop prior to turning right on a steady red *** in violation of section 11-306 of the Vehicle Code or section 106-625 of the City Code." *Id*. Article IV then provides a comprehensive method of adjudicating these violations, closely following the scheme set out in sections 11-208.3 and 11-208.6 of the Vehicle Code, and beginning by requiring a city official to "issue or direct to be issued a written notice of the violation to the registered owner or lessee of the vehicle as the alleged violator." City of Rolling Meadows Code of Ordinances, ch. 3, art. IV, § 3-70; see also City of Rolling Meadows Code of Ordinances, ch. 3, art. IV, §§ 3-71 to 3-81.

¶ 26    We find the language of the City Code clearly demonstrates the city of Rolling Meadows intended that article IV govern the adjudication of all violations captured by the automated traffic law enforcement system. Section 3-41 in article II therefore does not apply to automated

traffic law enforcement violations and the city was not required to file a written sworn pleading or complaint after it had mailed the notice of violation to plaintiff.

¶ 27    Plaintiff next contends, for the first time on appeal, that the code hearing unit lacked personal jurisdiction over him because he was never served with a written sworn pleading or complaint, relying on section 3-41(b) of the City Code. However, as we discussed above, the requirements of article II of the City Code, including section 3-41, do not apply to automated traffic enforcement system violations. See City of Rolling Meadows Code of Ordinances, ch. 3, art. II, § 3-37. In addition, arguments not raised before the administrative agency are waived for purposes of administrative review. *Chicago Teachers Union, Local 1 v. Chicago School Reform Board of Trustees*, 338 Ill. App. 3d 90, 103 (2003). Accordingly, this issue is waived.

¶ 28    For the foregoing reasons, the judgments of the circuit court and the Rolling Meadows code hearing unit are affirmed.

¶ 29    Affirmed.