NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250137-U

NO. 4-25-0137

IN THE APPELLATE COURT

FILED
May 22, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| SAYAKA THEW, | ) | Appeal from the |
|     Petitioner-Appellant, | ) | Circuit Court of |
|     v. | ) | Winnebago County |
| ALDRIN J. ARGOSINO, | ) | No. 20F185 |
|     Respondent-Appellee. | ) | |
| | ) | Honorable |
| | ) | Amy Peterman, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed the trial court's order dismissing petitioner's motion
                 to vacate or modify an injunctive order, concluding (1) the appellate court had
                 jurisdiction, (2) the trial court had subject-matter jurisdiction, (3) petitioner was
                 not denied procedural due process, and (4) the court did not err by declining to
                 vacate or modify the order.

¶ 2          In this contentious action involving allocation of parental responsibilities,

petitioner, Sayaka Thew, appeals the trial court's order denying her motion to vacate an order

requiring the parties' daughter, H.A. (born 2015), to attend counseling with a specific provider,

Roseanne Oppmann, and to not use any of H.A.'s previous counselors. In the original oral order,

entered on March 20, 2024, the court did not specifically enjoin use of H.A.'s previous

counselors. However, that provision was included in a written order entered on May 15, 2024,

approved by the parties' attorneys, stating the order was entered over Thew's objection. On July

18, 2024, in a written order, the court again ordered H.A. to continue counseling with Oppmann

and not use her previous counselors. No objection was noted.

¶ 3        In September 2024, Thew, through new counsel, moved to vacate or modify the May 15 and July 18, 2024, written orders, arguing the trial court did not enjoin use of the child's previous counselors in its oral rulings at the March 20, 2024, hearing, and the written orders denied Thew procedural due process because no hearing was conducted on the matter. Thew asked the court to either (1) vacate the orders, (2) provide notice and an opportunity to be heard, or (3) modify the orders to reflect what the court actually ordered in its oral rulings on March 20, 2024. Respondent, Aldrin J. Argosino, moved to dismiss the motion.

¶ 4        Following a hearing, during which Thew and Maureen Lawson, the guardian *ad litem*, testified, the trial court denied Thew's motion to vacate and granted Argosino's motion to dismiss, finding that (1) the motion was untimely and (2) Thew did not meet her burden to show the parties did not agree to the order. However, the court granted Thew leave to file a new motion to modify.

¶ 5        Thew appeals, arguing that the trial court erred by failing to vacate the orders because (1) a motion to vacate injunctive relief can be filed at any time, (2) the injunctive portion of the orders was void because they were issued outside of justiciable issues authorized under the Illinois Parentage Act of 2015 (Parentage Act) (750 ILCS 46/101 *et seq.* (West 2022)), (3) the orders were void because they were entered without notice and a hearing, in violation of Thew's right to due process, and (4) Thew did not agree to the injunctive portion of the orders. We affirm.

¶ 6                        I. BACKGROUND

¶ 7                 A. The Initial Trial Court Proceedings

¶ 8        In May 2020, Thew filed a petition to establish Argosino's paternity under the

- 2 -

Parentage Act. Thew also sought the majority of parenting time and requested appropriate support orders. Argosino admitted paternity.

¶ 9        In August 2023 and June 2024, Argosino filed petitions under the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 *et seq.* (West 2022)), seeking allocation of parental responsibilities and parental decision making. Argosino alleged that each time he was awarded parenting time, Thew would prevent him from having parenting time by (1) seeking an order of protection, (2) making unfounded allegations to the Illinois Department of Children and Family Services (DCFS), or (3) claiming H.A. was ill. Argosino alleged this conduct demonstrated that Thew continually alienated H.A. from him. Argosino sought primary allocation of parenting time and sole decision-making responsibilities.

¶ 10        Overall, the record shows the proceedings were very contentious, with substantial disagreements over parenting time and allocation of parental responsibilities. For example, over the course of the trial court proceedings, Thew brought allegations that Argosino used drugs, Argosino sexually abused H.A., and H.A. did not want to attend visitation. Argosino denied any abuse and asserted Thew fabricated the abuse allegations to alienate him from H.A. and prevent him from exercising his parenting time.

¶ 11        Portions of the record suggest that Thew brought an abuse allegation after the trial court ordered Argosino would be allowed to take H.A. on vacation. The record also suggests the only allegation of sexual abuse against Argosino was related to an incident in which he put ice in H.A.'s pants when other family members were present. There were further suggestions Thew had a history of telling Lawson that H.A. did not want to attend visitation, but when Lawson spoke to H.A., Lawson discovered that H.A. was fine with attending visitation. Because of the allegations against Argosino, an order of protection was in place, and his visitation with H.A. was

supervised by family members.

¶ 12                    B. The March 20, 2024, Trial Court Proceedings

¶ 13          On March 20, 2024, a status hearing was conducted via Zoom. At the beginning of the hearing, Thew's counsel, Elizabeth Granger, noted Thew was present. The trial court also noted it saw both parties' devices on Zoom. Granger told the court there was a "new concern" in the ongoing litigation—namely, one of H.A.'s counselors, Dawn Rolander, had called DCFS and indicated there might be "another investigation."

¶ 14          Lawson told the trial court the matter was not new and instead was based on prior allegations. She said Rolander had not spoken to anyone other than Thew and H.A. Lawson explained that Rolander was a counselor at Rockford Sexual Assault Counseling (RSAC), which was "a place that you go where you've already been sexually abused." Lawson said there had been no finding or credible evidence of actual abuse. Lawson believed Rolander was a detriment to the case because she did not talk to either Lawson or Argosino. Lawson noted she tried to communicate with Rolander multiple times, without success. Lawson recommended that the court order a custodial evaluation and that H.A. see a counselor who would communicate with Lawson, DCFS, and both parties. Lawson recommended H.A. stop seeing Rolander and instead see Oppmann, whom Lawson recommended as a counselor because Oppman had "a history of talking to everyone," which was needed in the case.

¶ 15          Argosino's counsel, Laura Baluch, also suggested the trial court appoint a custodial evaluator.

¶ 16          Granger responded, "I can talk to my client about [Oppmann], but also talk about that custodial evaluator especially if [Lawson] thinks it would be helpful to her, and I think it would be helpful to the court." Granger also stated, "I have to talk to my client about switching

- 4 -

counselors, of course." After a discussion of various allegations in the case, Granger further stated, "I think an independent custodial evaluator could sort through some of these things. It'll be based upon other facts, and science, and data, and then that would be helpful."

¶ 17 Lawson acknowledged Granger had to talk to Thew but noted her knowledge that counsel for both parties had respect for Oppmann. Lawson further stated, "[T]o me, she is one of the number one counselors that can work through issues where there's parent interference or, you know, any of these things." Lawson said any custodial evaluator was "going to put in some type of counseling" and suggested everyone talk about Oppmann so that they could potentially reach an agreement by the next court date. The trial court expressed agreement, and Granger stated, "[E]ven if it's a short time I can get that motion for a custodial evaluator on file, but I at least have to talk to my client about it."

¶ 18 The parties then addressed a disagreement as to how to divide parenting time during spring break, during which Baluch suggested Argosino should have four days of the break. Thew objected, and the following colloquy then occurred.

> "THE COURT: Okay. And [Lawson], as guardian *ad litem*, also agrees that this should be split as requested by [Baluch]?
>
> MS. LAWSON: Yes, Your Honor.
>
> THE COURT: All right. Then I'm going to order that over objection of [Granger] and her client, we're going to set the matter for counseling, which is the [Oppmann] situation. That in my experience, she's been very, very good on all the cases that I have concerning her as a counselor for children."

The trial court then set a status date for April 23, 2024, and asked Baluch to prepare an order.

¶ 19 C. The April 23, 2024, Trial Court Proceedings

- 5 -

¶ 20 On April 23, 2024, Thew appeared via Zoom with a different attorney from Granger's office, and her counsel specifically noted Thew's presence. Baluch noted there was a previous order concerning counseling, said a proposed written order had been sent to Thew's counsel, and stated, "[W]e do need to get that order entered." Thew's counsel replied, "[C]an you send that to my e-mail right away? I must have missed it, I apologize. It'll just populate at the top of my e-mail, and I'll go ahead and sign off on that today." Lawson repeated her recommendation that H.A. see Oppmann for counseling.

¶ 21 D. The Written Orders

¶ 22 On May 15, 2024, the trial court entered a written order prepared by Baluch. The order included a line stating it was approved by Granger, with Granger's signature. The order stated, in part, "Over Petitioner's objection, the minor child and the parties shall begin counseling with [Oppmann], and the child shall not use any of her current counselors, including the counselor at RSAC, for further counseling services."

¶ 23 On July 11, 2024, at another court hearing, Argosino alleged Thew was continuing to interfere with parenting time. The trial court ordered police-enforced parenting time. Granger also withdrew as Thew's counsel. Thew was present for the hearing. In a July 18, 2024, written order, the court stated, "The minor child and the parties shall continue counseling with [Oppmann] and the child shall not use any of her previous counselors, including the counselor at RSAC, for further counseling services."

¶ 24 E. Thew's Motion To Vacate or Modify

¶ 25 On September 30, 2024, Thew, through new counsel, Leann Duncan, filed a "motion to vacate or modify order resulting from 03/20/2024 court date." In the motion, Thew noted the trial court ordered counseling over her objection. Thew also noted the May 15, 2024,

- 6 -

written order included a provision that H.A. would not use any of her previous counselors and alleged that was not part of the court's March 20, 2024, oral rulings. Thew further noted the July 18, 2024, order included the same provision. Thew asserted that because the order was not based on any written motion and she was not afforded notice and opportunity to be heard, she was denied due process. Thew further argued the court could revoke or modify a temporary order at any time and stated, "at a minimum," she should be granted the opportunity to have a hearing on the matter. In the alternative, Thew asserted the court should modify the written orders to reflect what the court actually said in its oral rulings. In her prayer for relief, Thew asked the court to either vacate or modify both the May 15 and July 18, 2024, orders.

¶ 26 Argosino filed a motion to dismiss Thew's motion to vacate, arguing (1) Thew agreed to the order for counseling, (2) a temporary order could not be vacated, and (3) Thew's motion was untimely because it was not filed within 30 days of the orders.

¶ 27 F. Hearing on the Motion To Vacate or Modify

¶ 28 On January 13, 2025, the trial court, with a new judge presiding over the case, conducted a hearing on the matter. During the hearing, the court asked whether the motion was to vacate or modify the earlier orders. Duncan clarified the motion was "a motion to vacate and to find that the order is void." Duncan argued the court could vacate the order at any time and it was void because it was entered without agreement or due process. Duncan noted the order stated the provision concerning former counselors was entered over objection. The court expressed concern that Granger might have consulted with Thew and agreed to the order after a consultation. The court then heard evidence on the matter.

¶ 29 1. *Thew's Testimony*

¶ 30 Thew testified she did not have any communication with Granger after the March

20, 2024, court date but also said she told her "attorney at the time" that she did not agree with the order. She said she tried to e-mail Granger and never got a response but admitted she obtained a copy of the trial court's order from someone. Thew said she tried to contact Oppmann, but Oppmann never responded to her. Thew also testified H.A. often told her that she missed a counselor at RSAC named Marilyn Ramirez.

¶ 31                                    2. *Lawson's Testimony*

¶ 32          Lawson testified she tried to speak to Rolander before the March 2024 court date, but Rolander did not respond. Lawson spoke with Ramirez and was concerned because the story Ramirez told Lawson was not the same story H.A. told her. Lawson felt Ramirez was biased. Lawson believed Ramirez obtained information from Thew and that led Ramirez to interpret the incident of Argosino putting ice in H.A.'s pants as sexual abuse. Lawson was concerned Ramirez had not spoken to Argosino or his family, who were present during the incident. Lawson testified that H.A. reported feeling safe with both parents and enjoyed the time she spent with Argosino.

¶ 33          Lawson also testified Ramirez had not seen H.A. many times. When Lawson asked H.A. if she remembered going to counseling with Ramirez, H.A. did not remember Ramirez. Lawson was not sure why Thew switched H.A. from Rolander to Ramirez, but she opined Thew was seeking evidence that H.A. had been sexually abused. Lawson also testified about three DCFS investigations into Argosino or relatives of H.A., stating those investigations were determined to be unfounded. Lawson also found the allegations of abuse against Argosino or relatives of H.A. to be unfounded. Lawson stated a neutral counselor should be chosen, whether it was Oppmann or someone else.

¶ 34                                    3. *The Trial Court's Order*

¶ 35          The trial court granted the motion to dismiss with leave to file a motion to modify,

stating as follows:

> "I would tend to agree that this should have been set for a hearing if there was no agreement. However, I don't find that I've been presented with enough evidence that's reliable enough to indicate that that wasn't [Granger's] representation and understanding at that point in time. I understand [the previous judge] did not specifically order that. However, what I have in front of me is an order that was submitted to the judge indicating that there was approval as to form and signed by her attorney.
>
> I would also note that your motion to vacate—and this was entered on May 15th of 2024. Your motion to vacate or modify was not filed until September 30th of 2024. I find that the motion at this point is untimely, and over the objection of the petitioner, I am going to grant the respondent's motion to dismiss the petitioner's Motion to Vacate or Modify the order resulting from *** from March 20th of 2024 at this time. However, I do give you leave to file a motion to modify and a basis to modify what has been enforced already.
>
> I would note again it looks like there was another order entered with that same language on July 18th of 2024, and this motion is not timely based on the fact that those orders entered. So at this time I do not find that you have met your burden in order to satisfy the motion to vacate or modify order resulting from March 20th of 2024."

The court also stated the following:

> "So order to follow regarding hearing and *** dismissing petitioner's motion for the reasons that I listed. One, this was not timely filed. Two, it was

signed off on by her attorney who was representing her at the time indicating that there must have been some sort of agreement or understanding at that point. Otherwise, her attorney would not have signed off on it. I was not compelled by the testimony that I heard, which I noticed there were some errors in recollection, which is why I wish [Granger] was here to speak to what actually occurred, but she was not presented as a witness. So for those reasons, I am going to dismiss the petitioner's motion."

In its January 14, 2025, written order, the court also noted it "did not find the testimony of the Petitioner compelling." The order granted Thew leave to file a motion to modify.

¶ 36    This appeal followed.

¶ 37                                II. ANALYSIS

¶ 38    Thew appeals, arguing that the trial court erred by failing to vacate the orders because (1) a motion to vacate injunctive relief can be filed at any time, (2) the injunctive portion of the orders was void because they were issued outside of justiciable issues authorized under the Parentage Act, (3) the orders were void because they were entered without notice and a hearing, in violation of Thew's right to due process, and (4) Thew did not agree to the injunctive portion of the orders.

¶ 39    In response, Argosino argues this court lacks jurisdiction, the matter is moot or forfeited, and the orders are not void.

¶ 40    We affirm the trial court's judgment.

¶ 41                                A. Jurisdiction

¶ 42    As an initial matter, Argosino suggests this court lacks jurisdiction or the matter is moot or forfeited because Thew attacked only the March 20 and May 15, 2024, orders and not

- 10 -

the July 18, 2024, order. We disagree.

¶ 43 Thew brings this interlocutory appeal under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), which provides a party may appeal an interlocutory order of the trial court granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction. To determine what constitutes an appealable injunctive order under Rule 307(a)(1), we consider the substance of the order and not its form. *In re M.S.*, 2015 IL App (4th) 140857, ¶ 28. Orders that have "the force and effect of injunctions" are appealable even if called something else. *Rathje v. Horlbeck Capital Management, LLC*, 2014 IL App (2d) 140682, ¶ 25.

¶ 44 "In the context of Rule 307(a)(1), the meaning of the term 'injunction' is broadly construed." *M.S.*, 2015 IL App (4th) 140857, ¶ 28. An "injunction" is " 'a judicial process, by which a party is required to do a particular thing, or to refrain from doing a particular thing, according to the exigency of the writ, the most common sort of which operate as a restraint upon the party in the exercise of his real or supposed rights.' " *In re A Minor*, 127 Ill. 2d 247, 261 (1989) (quoting *Wangelin v. Goe*, 50 Ill. 459, 463 (1869)).

¶ 45 Here, the provision forbidding H.A. from utilizing her former counselors required her and Thew to refrain from exercising a right. Thus, it was injunctive, and Thew could appeal from the trial court's January 14, 2025, order refusing to modify or dissolve that injunction. Thew timely appealed from that order. Accordingly, we have jurisdiction.

¶ 46 B. Mootness and Forfeiture

¶ 47 As a related matter, Argosino also argues the matter is moot or forfeited because Thew challenged only the March 20 and May 15, 2024, orders and not the July 18, 2024, order, which contained the same injunctive provision. However, Argosino's basis for that argument is factually incorrect. The record clearly shows Thew challenged all of the pertinent orders. In her

motion to vacate, she specifically addressed matters arising out of the March 20, 2024, court date and requested the trial court vacate or modify both the May 15 and July 18, 2024, orders. On appeal, Thew again discusses both orders and argues the court erred by dismissing her petition. Thew's arguments clearly encompass all of the orders. Accordingly, we find no merit to Argosino's assertion the matter is moot or forfeited.

¶ 48                                      C. Void Order

¶ 49         Thew contends the May 15 and July 18, 2024, orders are void because they were entered without procedural due process and outside of the justiciable issues and relief available to the trial court. In particular, Thew argues the orders were void because (1) the court lacked authority under the Parentage Act to order H.A. to refrain from seeing previous counselors, (2) no party had filed a pleading seeking such relief, and (3) the court never conducted a hearing on the matter.

¶ 50                               1. *Subject-Matter Jurisdiction*

¶ 51         Thew argues the trial court lacked subject-matter jurisdiction to order H.A. to refrain from using her previous counselors. We disagree.

¶ 52                               a. The Applicable Law

¶ 53         "A judgment entered by a court that lacked subject-matter jurisdiction is void and may be attacked at any time and in any proceeding." *In re John C.M.*, 382 Ill. App. 3d 553, 558 (2008). Whether a court has subject-matter jurisdiction to entertain a claim presents a question of law, which we review *de novo*. *McCormick v. Robertson*, 2015 IL 118230, ¶ 18.

¶ 54         Subject-matter jurisdiction refers to jurisdiction over the general class of cases to which the proceeding in question belongs. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335 (2002). With the exception of the trial court's power to review an

administrative action, which is conferred by statute, a trial court's subject-matter jurisdiction is conferred entirely by the Illinois Constitution. *Id.* Under section 9 of article VI of the Illinois Constitution (Ill. Const. 1970, art. VI, § 9), the jurisdiction of trial courts extends to all " 'justiciable matters except when the Supreme Court has original and exclusive jurisdiction relating to the redistricting of the General Assembly and to the ability of the Governor to serve or resume office.' " *McCormick*, 2015 IL 118230, ¶ 20 (quoting Ill. Const. 1970, art. VI, § 9). "So long as a matter brought before the circuit court is justiciable and does not fall within the original and exclusive jurisdiction of our [supreme] court, the circuit court has subject matter jurisdiction to consider it." *Id.* Thus, "[t]he *only* consideration is whether it falls within the general class of cases that the court has the inherent power to hear and determine. If it does, then subject matter jurisdiction is present." (Emphasis in original.) *Id.* ¶ 23.

¶ 55                                    b. This Case

¶ 56           Here, Thew initially brought her claim under the Parentage Act, which broadly incorporates the Marriage Act in multiple sections. For example, regarding allocation of parental responsibilities, the Parentage Act allows the trial court to issue temporary orders that "may include provisions for the allocation of parental responsibilities and parenting time as provided by the [Marriage Act]." 750 ILCS 46/501(b) (West 2022). Meanwhile, Argosino brought his own petitions under the Marriage Act. The Marriage Act allows a person to commence a proceeding under that act "by filing a petition for allocation of parental responsibilities with respect to the child in the county in which the child resides." 750 ILCS 5/601.2(b)(2) (West 2022). Thus, the matter fell within the general class of cases that the court had the inherent power to hear and determine. As such, there was a justiciable issue.

¶ 57           We note Thew cites *Fisher v. Waldrop*, 221 Ill. 2d 102, 112-13 (2006), to argue

- 13 -

the Parentage Act was required to specifically incorporate sections 605.5 and 607.6 of the Marriage Act (750 ILCS 5/605.5, 607.6 (West 2022)) for the trial court to have authority to address issues of counseling. However, we do not read *Fisher* to hold that specifically naming a section is required. Regardless, even if we were to accept Thew's argument, as previously noted, the court had subject-matter jurisdiction under the Marriage Act directly in relation to Argosino's petitions to allocate parental responsibilities.

¶ 58                                    2. *Procedural Due Process*

¶ 59        Thew next argues the orders were void because they were entered without procedural due process. Specifically, she argues she was denied notice and an opportunity to be heard. We disagree.

¶ 60                                    a. The Applicable Law

¶ 61        "Procedural due process claims concern the constitutionality of the specific procedures employed to deny a person's life, liberty, or property interest." *Ollins v. Karl*, 2022 IL App (1st) 220150, ¶ 31 (citing *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 244 (2006)). "Fundamentally, procedural due process requires an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). "Procedural due process requirements are met 'by having an orderly proceeding wherein a person is served with notice, actual or constructive, and has an opportunity to be heard and to enforce and protect his rights.' " *Id.* (quoting *Tri-G*, 222 Ill. 2d at 244). "Procedural due process rights include a right to present evidence and argument, a right to cross-examine witnesses, and impartiality in rulings upon the evidence which is offered." *Fischetti v. Village of Schaumburg*, 2012 IL App (1st) 111008, ¶ 16. However, the concept of due process is flexible and calls for such procedural protections as the particular situation demands. *Mathews*, 424 U.S.

at 334. " '[P]rocedural due process is not a guaranty against erroneous or unjust decisions, or the incorrect interpretation of statutes or rules of law. Neither an abuse of discretion nor an erroneous rule of law will support a reversal for a deprivation of procedural due process.' " *Ollins*, 2022 IL App (1st) 220150, ¶ 32 (quoting *Tri-G*, 222 Ill. 2d at 246).

¶ 62                                    b. This Case

¶ 63            Thew relies on *In re Custody of Ayala*, 344 Ill. App. 3d 574 (2003), to argue the orders were void because (1) the issue of counseling was not raised by any pleading and (2) she lacked notice and an opportunity to be heard. In *Ayala*, the petitioner initiated a paternity action against the mother of his child and asked for joint legal custody. *Id.* at 585. Subsequently, the trial court awarded joint custody to the petitioner's wife and parents. *Id.* The respondent contended several trial court orders were void based on a violation of her due process rights because she had no notice that awarding co-custody to the petitioner's wife and parents was an issue or that custody would be determined on the date of the order. *Id.* The appellate court held the trial court exceeded its subject-matter jurisdiction in awarding joint custodial care to the petitioner's wife and parents because no pleading requested that relief. *Id.* Furthermore, the appellate court concluded the custody order was void because, without notice that custody was at issue on the date of the hearing, the respondent was denied the opportunity to be heard on the issue. *Id.* at 587.

¶ 64            We conclude *Ayala* is distinguishable. In *Ayala*, there was a lack of *any* pleading raising the issue of a grant of co-custody to new parties other than the parents. *Id.* at 585; see *In re Marriage of Solecki*, 2020 IL App (2d) 190381, ¶ 46 (distinguishing *Ayala*). Here, however, matters concerning parental responsibilities were before the trial court related both to the original petition and to Argosino's petitions alleging abuse of allocated parenting time and

seeking sole decision-making authority.

¶ 65        Regarding an opportunity to be heard, aside from a lack of a pleading in *Ayala* providing notice of the issue, the respondent there was also denied an opportunity to be heard on the matter. However, *Ayala* has been distinguished when, despite a claim that a party received no notice of a child-support hearing and an associated order, the party actually appeared in the trial court for the hearing and was at the very least aware there was a petition for child support pending before the court. *Fiallo v. Lee*, 356 Ill. App. 3d 649, 655 (2005).

¶ 66        Here, the record shows Thew was present for the March 20 status hearing, during which counseling was discussed. Then, Thew's counsel appeared receptive to the change in counseling and did not request a hearing to contest it. Instead, Granger merely stated she would have to discuss the matter with Thew. Then, Thew was present again on April 23, 2024, when her counsel discussed the order and indicated it would be approved.

¶ 67        Next, Granger agreed to the May 15, 2024, order stating that, over objection, H.A. would not see her previous counselors. No specific due process objection was provided, and had Thew desired a hearing to contest the matter, it is illogical that she would have agreed to the order being entered without one. When the provision was again included in the July 18, 2024, order, Thew again did not voice an objection or request a hearing. Accordingly, Thew was aware of the matter and had multiple opportunities to seek a hearing. However, she did not do so. Instead, Thew repeatedly acquiesced to the orders being entered without a hearing on the matter and cannot now claim a violation of procedural due process. See *Cholipski v. Bovis Lend Lease, Inc.*, 2014 IL App (1st) 132842, ¶ 63 ("When a party acquiesces to a trial court's ruling, even if it is improper, the party cannot contest the ruling on appeal.").

¶ 68        Similarly, the trial court found Thew's motion untimely. Thew argues she could

bring a motion to vacate or modify at any time. See *Catlett v. Novak*, 116 Ill. 2d 63, 68 (1987) ("An interlocutory order can be reviewed, modified, or vacated at any time before final judgment."). However, she did not show any form of diligence in raising issues concerning the substance of the orders or issues of due process. "The general rule is that it is the duty of a person, whenever he regards his constitutional rights to have been invaded, to raise an objection at the earliest fair opportunity, and the failure to do so amounts to a waiver of the right." *Feldman v. Board of Trustees of Southern Illinois University*, 108 Ill. App. 3d 1127, 1134 (1982). " 'The decision to grant or deny a motion to vacate is at the discretion of the trial court and will not be reversed on review absent an abuse of that discretion.' " *Bangaly v. Baggiani*, 2014 IL App (1st) 123760, ¶ 185 (quoting *Green v. Board of the Municipal Employees', Officers' & Officials' Annuity & Benefit Fund of Chicago*, 309 Ill. App .3d 757, 763 (1999)).

¶ 69 Here, Thew's motion amounted to an "after-the-fact complaint about an avoidable situation" that she could have prevented had she presented her arguments to the trial court in a timely fashion. See *Sanders v. Shephard*, 185 Ill. App. 3d 719, 727-28 (1989). As such, the trial court properly exercised its discretion to dismiss her motion.

¶ 70 D. Scrivener's Error and Agreement

¶ 71 Finally, we note that to the extent Thew also argues the trial court's order should be vacated due to a scrivener's error because of its inclusion of the provision H.A. was to refrain from seeing previous counselors, such a matter would not render the order void. Further, to the extent Thew sought to modify the order based on a scrivener's error, the record shows the provision was reasonable and clearly contemplated by the discussion at the March 20 and April 23, 2024, hearings. Additionally, Thew's counsel agreed to the order. Thew notes the order stated the counseling provision was over her objection, but it did not establish what the objection

was. Regardless, Thew's counsel agreed that the substance of the court's order included that

H.A. refrain from seeing previous counselors. Thus, a scrivener's error was not established.

¶ 72                                    III. CONCLUSION

¶ 73          For the reasons stated, we affirm the trial court's judgment.

¶ 74          Affirmed.